1         IN THE UNITED STATES DISTRICT COURT

2         FOR THE WESTERN DISTRICT OF MICHIGAN

3                SOUTHERN DIVISION

4

5  UNITED STATES OF AMERICA,

6        Plaintiff,

7   v.                       CASE NO:  1:14-CR-50

8  BRADLEY MICHAEL ABBRING,

9        Defendant.

10  _____/

11               * * * *

12        FIRST APPEARANCE, ARRAIGNMENT

13         and CHANGE OF PLEA HEARING

14               * * * *

15

16    BEFORE:   THE HONORABLE HUGH W. BRENNEMAN, JR.
             United States Magistrate Judge
17            Grand Rapids, Michigan
             April 3, 2014
18
    APPEARANCES:
19
    APPEARING ON BEHALF OF THE PLAINTIFF:
20
        TESSA K. HESSMILLER
21        Assistant United States Attorney
        P.O. Box 208
22        Grand Rapids, Michigan  49501-0208

23  APPEARING ON BEHALF OF THE DEFENDANT:

24        GARY M. GABRY
        Hettinger & Hettinger, PC
25        200 Admiral Avenue
        Portage, Michigan  49002

1          Grand Rapids, Michigan

2          April 3, 2014

3          at approximately 9:39 a.m.

4                    PROCEEDINGS

5          THE COURT:  United States vs. Bradley Michael

6   Abbring; 1:14-CR-50.

7          Good morning to you, counsel.

8          MS. HESSMILLER:  Morning, your Honor.

9          MR. GABRY:  Morning, your Honor.

10         THE COURT:  You are Mr. Bradley Abbring?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Am I pronouncing your last name

13   correctly?

14         THE DEFENDANT:  Close enough.

15         THE COURT:  What is it?

16         THE DEFENDANT:  Close enough.  I mean--

17         THE COURT:  How do you pronounce it?

18         THE DEFENDANT:  Abbring.

19         THE COURT:  Abbring, all right.  I'm sorry.

20         THE DEFENDANT:  That's all right.

21         THE COURT:  Counsel, I wonder if you might bring your

22   client up to the lectern for purposes of arraignment in this

23   matter.

24         MR. GABRY:  I will do that, your Honor.

25         THE COURT:  Mr. Abbring, this is the United States

1  District Court for the Western District of Michigan, it is a

2  federal court.  You are here because the government has filed a

3  Felony Information or proposes to file a Felony Information

4  charging you with receipt of child pornography.  Did you

5  receive a copy of this Felony Information?

6         THE DEFENDANT:  Yes.

7         THE COURT:  Have you read it over?

8         THE DEFENDANT:  Yes.

9         THE COURT:  Do you understand it?

10        THE DEFENDANT:  Yes.

11        THE COURT:  Counsel, do you want this charge read for

12  the record?

13        MR. GABRY:  No, your Honor.  We would waive formal

14  reading.

15        THE COURT:  All right.  Now there's a maximum penalty

16  for this charge, if you were convicted of it, is a prison term

17  of not less than five years and not more than 20 years.  There

18  would also be the possibility of a fine of up to $250,000.

19  There would be a period of supervised release after any prison

20  term of not less than five years, and possibly up to life.

21  There would be restitution, and the special assessment of a

22  hundred dollars as well.  Do you understand all of that?

23        THE DEFENDANT:  Yes.

24        THE COURT:  You have the right to have an attorney

25  represent you at all times, and if you want to have an attorney

1   and cannot afford one, the Court would appoint one for you at

2   no cost to you.  Now, you have retained an attorney and so I am

3   assuming you are not asking the Court to appoint you an

4   attorney at this time; is that correct?

5        THE DEFENDANT:  That is correct.

6        THE COURT:  If you find yourself unable to continue

7   to retain counsel for any reason, and you could not obtain

8   another attorney, you could always come back to the Court and

9   the Court would appoint an attorney for you.  And again, at no

10   cost to you, if you could not afford that attorney.  The point

11   being you always have a right to an attorney regardless of

12   whether or not you can afford that person.  Do you understand

13   that?

14        THE DEFENDANT:  Yes.

15        THE COURT:  You also have the right to remain silent,

16   that means you don't have to talk about this case with

17   anybody.  But if you do talk about this case with anyone, other

18   than your attorney, of course in private, whatever you say can

19   be used against you in trial.  Do you understand that?

20        THE DEFENDANT:  Yes.

21        THE COURT:  Now, the government proposes to file this

22   charge, but frankly, they cannot file this charge today without

23   your consent, because this is what we call an Information.  It

24   charges a felony.

25        A felony is any charge that carries the possibility

1  of a prison term in excess of one year, and if it was less than

2  that, it would be called a misdemeanor.  But where the

3  possibility of a prison term exists of more than one year, we

4  call that a felony.  Nobody can be required to come into this

5  court and answer a felony charge unless the prosecutor first

6  goes to a grand jury and gets an Indictment.

7       Now, the grand jury is a body of citizens, 16 to 23

8  people, who are jurors selected through our jury selection

9  process, and their function is to listen to evidence presented

10  to them by the prosecutors, the U.S. Attorney's Office, and

11  their function is to decide if there is probable cause to

12  believe that a crime has been committed, and that a particular

13  person or persons committed that crime.  And if they find that

14  there is probable cause to believe that an offense has been

15  committed, then they return what is called an Indictment, and

16  that's a formal criminal charge, and that requires a person to

17  show up in court and answer that charge.  By answer the charge,

18  I mean plead guilty or plead not guilty to that charge.

19       Now, unless a person is indicted, they don't have to

20  show up in court at all.  And that is the only way you can be

21  required to come into court and face a charge like this.

22  Unless you waive or give up your right to have the matter go to

23  the grand jury and you allow the charge to be filed without the

24  matter going to a grand jury.  When you do that, the charge is

25  not called an Indictment, it's called an Information, and

1  that's what we have today.  And we know it's an Information,

2  not only because it says it is, but because if you looked at

3  the back page, it would be signed only by the prosecutor and

4  not by the foreperson of the grand jury.

5      There is no signature of a grand jury foreperson on

6  here, which means it has not gone to the grand jury.  If it

7  went to the grand jury, at least 12 of those grand jurors would

8  have to concur that this charge ought to be filed, that there

9  is probable cause to believe that this charge ought to be

10  brought.  If it went to the grand jury, they might not come

11  back with this charge, they might come back with some other

12  charge, they could come back with this charge, they might come

13  back with no charge at all, but we don't know, because this

14  charge or this case has not gone to the grand jury.  So I guess

15  we are at the stage that the question is:  Do you want to allow

16  the government to go ahead and file this charge without the

17  matter going to the grand jury?  That is the only way this

18  charge is going to be filed today.

19      THE DEFENDANT:  Yes.

20      THE COURT:  Do you understand everything I've told

21  you?

22      THE DEFENDANT:  Yes, I do.

23      THE COURT:  Quite a bit of stuff.

24      THE DEFENDANT:  Yep.

25      THE COURT:  Did you talk to your attorney about

1  this?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Understand everything I said?

4          THE DEFENDANT:  Yes.

5          THE COURT:  All right.  And do you want to allow the

6  charge to be filed today?

7          THE DEFENDANT:  Yes.

8          THE COURT:  All right.  Has anybody threatened you in

9  any way or used any force or duress or undue pressure or

10  anything of that nature to make you give up your right to have

11  this matter presented to the grand jury?

12          THE DEFENDANT:  No.

13          THE COURT:  You are consenting to this charge being

14  filed freely and voluntarily as far as you are concerned?

15          THE DEFENDANT:  Yes.

16          THE COURT:  I'm sorry, I can't hear you.

17          THE DEFENDANT:  Yes.

18          THE COURT:  All right.  We have a consent form, which

19  is called a "Waiver of Indictment," that's being shown up on

20  the screen.  Looks like you had a chance to look at that this

21  morning, and it looks like you signed that this morning.  Is

22  that correct?

23          THE DEFENDANT:  Yes.

24          THE COURT:  All right.  Any questions about that

25  form?

1       THE DEFENDANT:  No.

2       THE COURT:  All right.  I believe that the defendant

3   knows what he is doing, and that he is doing it voluntarily in

4   signing this waiver.  The waiver may be filed.  The Information

5   maybe filed, and the matter is now officially before the

6   Court.  We will proceed on the Information.

7       You continue, of course, to have the rights to have

8   an attorney, the right to remain silent that I already told you

9   about.  Moreover, you are presumed to be innocent of this

10  charge, and the burden is on the government to prove that

11  you're guilty of this charge.  The government has to prove your

12  guilt of this charge beyond any reasonable doubt before you can

13  be convicted of it.  The mere fact that you allowed it to be

14  filed does not change that at all.  Do you understand that?

15      THE DEFENDANT:  Yes.

16      THE COURT:  And the fact that you are presumed

17  innocent means that you have the right to a trial, and that's a

18  public trial, and a speedy trial, and a trial by jury with the

19  assistance of your attorney.  And at that trial, you have the

20  right to confront and cross examine each and every witness

21  called by the government to prove its case.  You have the right

22  to call witnesses to testify in your behalf.  And if you want

23  somebody to come in and testify and they don't want to show up

24  for any reason, you can bring them in by a court order, which

25  we call a subpoena.  Your attorney can present other evidence

1  on your behalf.  And you have the right to testify or not

2  testify at trial as you choose.  And that's because you always

3  have the right to remain silent.  You also have the right to

4  enter a plea of either not guilty or guilty to this charge.  Do

5  you understand all of those rights?

6          THE DEFENDANT:  Yes.

7          THE COURT:  All right.  Now, those rights have been

8  put down in another form that we have, and that form is called

9  "Defendant's Rights."  That form is being shown up on the

10  screen.  Again, it looks like you had a chance to look that

11  form over and sign it this morning; is that correct?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Any questions about what is on that form

14  or anything I have told you this morning?

15          THE DEFENDANT:  Nope.

16          THE COURT:  Fine.

17          Counsel, how does your client plead-- How is your

18  client going to plead to this charge?

19          MR. GABRY:  Pursuant to a plea agreement reached with

20  the United States Attorney's Office, your Honor, we would be

21  entering a guilty plea to the charge.

22          THE COURT:  All right.  And you are prepared to do

23  that at this time?

24          MR. GABRY:  We are.

25          THE COURT:  All right, fine.  That's going to take a

1  little bit of time, so I'm going to suggest that you sit back

2  down at counsel table and we will proceed.

3      Mr. Abbring, I've already told you the maximum

4  possible sentence you face in this case.  The actual sentence

5  of the Court, if you are convicted, and of course, if you plead

6  guilty, you will be convicted, may be impacted by what we refer

7  to as the sentencing guidelines.

8      The sentencing guidelines are designed to help a

9  judge know what an appropriate sentence would be in a

10  particular case based on the facts of that case.  So the

11  guidelines take into consideration a wide variety of matters,

12  including any criminal background the defendant may have, and

13  based on all of those factors, the guidelines come up with a

14  recommended sentencing range for the judge to consider.  That

15  recommended sentencing range cannot exceed the maximum

16  sentence, but someplace within the maximum sentence will be

17  this recommended sentencing range.  The Judge can sentence you

18  within that recommended range, but he is not required to.  He

19  can go above it or he can go below it.  But he has to consider

20  that range very carefully before he makes up his mind, and

21  there is a procedure he follows to do that.  So that

22  recommendation is very important even though it is not binding

23  on the Judge.

24      I don't know what the recommendation would be in your

25  case, it has to be calculated by the probation office when they

1  do the presentence report.  However, there is nothing secret

2  about these guidelines, and your attorney has access to them,

3  and I'm sure is able to give you a pretty good idea of what the

4  guidelines would recommend as far as you are concerned.  Have

5  you spoken to your attorney about these guidelines?

6        THE DEFENDANT:  Yes.

7        THE COURT:  And was he able to give you some idea of

8  what the impact of those guidelines might be as far as you are

9  concerned?

10        THE DEFENDANT:  Yes.

11        THE COURT:  All right.  So you understand what I'm

12  talking about when I talk about the sentencing guidelines?

13        THE DEFENDANT:  Yep.

14        THE COURT:  All right.  Fine.

15        We will be coming back to those later on, so I just

16  want to make sure you understand what we are talking about.

17        Now, this case is assigned to the Honorable Paul

18  Maloney.  Judge Maloney is the United States district judge,

19  which means he was appointed by a President of the United

20  States, and he has a lifetime position from which he cannot be

21  removed.  And you have the right to have this hearing for the

22  purpose of entering your plea conducted by Judge Maloney, as

23  well as all further proceedings in this case.  And if he were

24  to conduct this hearing, he would ask you questions to make

25  sure that you knew what you were doing, that you were doing it

1  voluntarily, and that there was a basis or a foundation for

2  what you were doing.  And then, if everything went smoothly, he

3  would accept your plea, and he would refer the matter to the

4  probation office for the preparation of a presentence report.

5  Now, that normally takes several months.  When that report was

6  completed, you would return to court and he would impose the

7  sentence of the Court.

8        Now, our local court rules provide, that with your

9  consent, I can handle the hearing today for the purpose of you

10  entering your plea.  I am a United States magistrate judge, I'm

11  not a district judge, which means that I work for the district

12  judges to help them carry out their duties.  So if I take Judge

13  Maloney's place, I'm going to ask you the same kinds of

14  questions that he would ask, and then I will recommend to Judge

15  Maloney that he accept your plea, and at the same time I will

16  refer the matter to the probation office for the presentence

17  report.  It doesn't take any longer one way than the other.

18        When the report is done, you'll return to court, but

19  this time before Judge Maloney, and at that time, he would

20  finalize the acceptance of your plea, and impose the sentence

21  of the Court, and conclude the entire matter at that time.

22        So either way, it's going to be up to Judge Maloney

23  to determine the sentence of the Court.  That is entirely his

24  responsibility.  But for the purpose of you entering your plea

25  today, I can conduct that hearing, but again, only with your

1  consent.  Do you understand that?

2      THE DEFENDANT:  Yes.

3      THE COURT:  All right.  Fine.  Now we have a form

4  entitled "Consent to Proceed Before the Magistrate Judge,"

5  which is me, and I assume the fact that we are here this

6  morning is some indication that we are going to proceed that

7  way, and it looks like you have signed that form in that

8  respect.  Are you willing to have me handle this matter this

9  morning?

10     THE DEFENDANT:  Yes.

11     THE COURT:  Anybody threaten you or use any force or

12  duress or undue pressure to make you give up your right to have

13  Judge Maloney handle this hearing?

14     THE DEFENDANT:  No.

15     THE COURT:  All right.  Both attorneys have also

16  signed this form.  Counsel, are you comfortable with me

17  handling this matter?

18     MR. GABRY:  Certainly, your Honor.

19     THE COURT:  Fine.  Thank you.

20     And Ms. Hessmiller, do you concur as well?

21     MS. HESSMILLER:  Yes, your Honor.

22     THE COURT:  Has Judge Maloney's office indicated a

23  willingness that I handle this matter?

24     MS. HESSMILLER:  Yes, your Honor.

25     THE COURT:  All right.  Fine.

1          I believe that the defendant's consent to proceed

2    before me is both knowledgably and voluntarily given, I so

3    find, and that consent form may be filed.  We will proceed with

4    the plea at this time.

5          As I indicated, there are a number of questions I

6    have to ask you.  If at any time you do not understand

7    something, or you simply want to stop and talk to your

8    attorney, that's fine.  It's important that you do understand

9    what is happening as we go through the process.  So if you have

10   a question, or there is a problem, I want you to let me know,

11   all right?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Okay.  The clerk is going to give you an

14   oath that you'll answer all questions truthfully.

15         BRADLEY MICHAEL ABBRING - DEFENDANT - SWORN

16         THE COURT:  Please be seated.

17         Do you understand that having been sworn, your

18   answers to my questions will be subject to the penalties of

19   perjury or making a false statement, if you do not answer

20   truthfully?

21         THE DEFENDANT:  Yes.

22         THE COURT:  How old are you?

23         THE DEFENDANT:  Thirty-five.

24         THE COURT:  And how far have you gone in school?

25         THE DEFENDANT:  Some college, associate's.

1    THE COURT:  Associate's degree.

2    THE DEFENDANT:  Yes.

3    THE COURT:  And where did you get that?

4    THE DEFENDANT:  Grand Rapids Community College.

5    THE COURT:  All right.  Counsel, is your client

6  currently on parole or probation?

7    MR. GABRY:  No, your Honor, he is not.

8    THE COURT:  Fine.

9    Mr. Abbring, in the past 24 hours or so, have you had

10  any reason-- or let me rephrase that.  Have you consumed any

11  kind of medication, any pills, drugs, controlled substances,

12  narcotics, or had any alcohol?  Anything like that in the past

13  24 hours?

14    THE DEFENDANT:  Just my prescription.

15    THE COURT:  Fine.  What was that for?

16    THE DEFENDANT:  ADD, Adderall.

17    THE COURT:  I'm sorry?

18    THE DEFENDANT:  Adderall, for ADD.

19    THE COURT:  Okay.  Anything besides that?

20    THE DEFENDANT:  Nope.

21    THE COURT:  How often do you take Adderall, is that

22  daily?

23    THE DEFENDANT:  Yep.  Yes.

24    THE COURT:  Do you take it in the mornings?

25    THE DEFENDANT:  Yes.

1          THE COURT:  So you are on a usual schedule?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Is there anything about that medication

4    that makes you sleepy, drowsy, unable to pay attention to what

5    is happening?

6          THE DEFENDANT:  No.

7          THE COURT:  Are you under the care of a physician or

8    a psychiatrist or a psychologist or other medical care provider

9    for any other reason today?  Are you under the care of a

10   medical care provider for any other problem today?

11         THE DEFENDANT:  Oh, yes.

12         THE COURT:  What is that?

13         THE DEFENDANT:  Therapy.

14         THE COURT:  And are you seeing a psychiatrist or

15   psychologist?

16         THE DEFENDANT:  Psychologist.

17         THE COURT:  How often do you see that person?

18         THE DEFENDANT:  Once a week.

19         THE COURT:  All right.  Since it's a psychologist, I

20   assume there is no other medication involved?

21         THE DEFENDANT:  No.

22         THE COURT:  All right.  Are you experiencing any

23   medical problems today that you are not being treated for?

24         THE DEFENDANT:  No.

25         THE COURT:  Do you feel that you can both hear and

1  understand what is happening today?

2      THE DEFENDANT:  Yes.

3      THE COURT:  Either attorney have any doubt as to the

4  defendant's competence to enter a plea at this time?

5      Government?

6      MS. HESSMILLER:  No, your Honor.

7      THE COURT:  Thank you.

8      Defense?

9      MR. GABRY:  No, your Honor.

10      THE COURT:  All right.  I don't either based on the

11  answers that I heard so far.  Defendant seems perfectly

12  competent to enter a plea.

13      Mr. Abbring, you have a number of rights in this

14  court as I've just explained to you.  It's important to note,

15  however, that with the exception of your right to an attorney,

16  you are going to be losing those rights when you plead guilty.

17  Do you understand that?

18      THE DEFENDANT:  Yes.

19      THE COURT:  Your right to an attorney, you never

20  lose.  Counsel will represent you throughout this entire

21  matter, whether you plead guilty today or whether you go to

22  trial.  You never lose your right to an attorney.  Do you

23  understand that?

24      THE DEFENDANT:  Yes.

25      THE COURT:  Now, as far as pleading guilty or having

1 a trial is concerned, as far as this Court is concerned, you

2 have every right to a trial, and you have no obligation to

3 plead guilty.  Do you understand that?

4       THE DEFENDANT:  Yes.

5       THE COURT:  But if you do plead guilty, then you lose

6 your right to a trial and all of the rights that go with it

7 that I've just got done explaining to you.  Do you understand

8 that?

9       THE DEFENDANT:  Yes.

10      THE COURT:  And you told me you understood the charge

11  against you; is that correct?

12      THE DEFENDANT:  Yes.

13      THE COURT:  You have read that charge over; is that

14  right?

15      THE DEFENDANT:  Yes, sir.

16      THE COURT:  And you understand the maximum penalty

17  for that charge you would face if you plead guilty; is that

18  correct?

19      THE DEFENDANT:  Yes.

20      THE COURT:  Understanding all of those things, how do

21  you plead to this charge, receipt of child pornography that is

22  contained in this Felony Information, do you plead guilty or

23  not guilty?

24      THE DEFENDANT:  Guilty, your Honor.

25      THE COURT:  Well, a moment ago, I just told you that

1   you lose your right to a trial when you plead guilty.  And of

2   course the reason for that is that the purpose of a trial is to

3   determine if you did what you are accused of doing.  And if you

4   come into court, as you're doing this morning, and you say,

5   your Honor, I did it, I'm guilty.  Then you would have answered

6   the question that we would need a trial for, so we don't need a

7   trial, we don't have to have a trial to decide if you're

8   guilty, because you just got done telling us you're guilty.  So

9   that's why you lose or you give up your right to a trial.  You

10  understand that?

11        THE DEFENDANT:  Yes.

12        THE COURT:  And of course if you give up your right

13  to a trial, it's only logical you give up your rights that go

14  with it.  So again, if you give up your right to a trial, you

15  are giving up your right to a speedy trial, and a public trial,

16  and a trial by jury, with the assistance of your attorney, and

17  you are giving up your right to confront and cross examine

18  witnesses who will be called to testify against you.

19        And by giving up your right to a trial, you're giving

20  up your right to call witnesses to testify on your behalf, and

21  you're giving up your right to bring them in by court order if

22  they didn't want to show up voluntarily.  And by giving up your

23  right to a trial, you are giving up your right to be presumed

24  innocent and to force the government to prove your guilt beyond

25  any reasonable doubt.  So once again, do you understand that by

1 pleading guilty, you lose all of those rights?

2      THE DEFENDANT:  Yes.

3      THE COURT:  I also told you that you have the right

4 to remain silent.  When you plead guilty, that changes too.  In

5 a few minutes, I'm going to ask you what you did that makes you

6 guilty of this charge, and you have to answer those questions

7 of course, and to that extent you're giving up your right to

8 remain silent.  Do you understand that?

9      THE DEFENDANT:  Yes.

10      THE COURT:  All right.  There is a plea agreement in

11 this case, and I believe I have the original.  It looks a

12 little cobbled together, but only because the signature page

13 has been added, but I believe this is the original document.

14 Mr. Abbring, do you have a copy of this plea agreement in front

15 of you?

16      THE DEFENDANT:  Yes.

17      THE COURT:  Let's turn to the back page, which is

18 Page 8.  My copy shows that you signed this on March 17th of

19 this year, and that both attorneys in the courtroom today

20 signed this on March 18th of this year.  Is this your

21 signature?

22      THE DEFENDANT:  Yes, sir.

23      THE COURT:  Did you read this agreement over before

24 you signed it?

25      THE DEFENDANT:  Yes.

1          THE COURT:  Did you discuss it with your attorney

2   before you signed it?

3          THE DEFENDANT:  Yes.

4          THE COURT:  The most important question is:  Did you

5   understand this agreement before you signed it?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Any doubt about that?

8          THE DEFENDANT:  No.

9          THE COURT:  You seemed to hesitate a little bit.

10         THE DEFENDANT:  Just a lot to take in.

11         THE COURT:  Pardon me?

12         THE DEFENDANT:  I said it's just the whole thing is a

13   lot to take in right now.

14         THE COURT:  I understand that.  And if you have any

15   hesitation, I want you to let me know.

16         THE DEFENDANT:  No, sir.

17         THE COURT:  Okay.  I'm going to ask the prosecutor to

18   summarize some of the highlights of this agreement.  I would

19   like you to listen very carefully to what she says, because in

20   a few minutes, I'm going to ask you if you agree with what she

21   says, all right?

22         THE DEFENDANT:  Yes.

23         THE COURT:  All right.  Miss Hessmiller.

24         MS. HESSMILLER:  Your Honor, the defendant is

25   agreeing to plead guilty to the felony information charging a

1 single count of receipt of child pornography under 18 U.S.C.

2 Section 2252A(a)(2)(A).

3       In Paragraph 2, the defendant acknowledges that he

4 understands the elements of the crime, which are listed in that

5 paragraph.

6       In Paragraph 3, the defendant understands the

7 penalties which have accurately been summarized by the Court.

8       In Paragraph 4, the defendant understands that he

9 will be required to pay restitution as required by law.

10       Paragraph 5, the defendant acknowledges--

11      THE COURT:  I'm going to stop you for just a moment.

12 When we talk about restitution in a case like this, what does

13 that restitution normally refer to?

14      MS. HESSMILLER:  It normally refers, your Honor, in

15 case there is a child whose image is included in the count of

16 conviction, which here is receipt of child pornography on

17 February 7th, 2013.  If there is a child identified in that

18 group of images who submits a restitution request, the Court

19 generally considers those requests for restitution.  It does

20 not include children whose images were elsewhere in the

21 defendant's collection.

22      THE COURT:  And what kind of restitution might

23 somebody request if their picture was in that collection?

24      MS. HESSMILLER:  Your Honor, the children who are

25 identified can request different types of restitution.  For

1  example, medical treatment, psychological care, lost wages,

2  reduction in value of life that directly stems from the effect

3  of their image being received by other people over the

4  internet.

5        THE COURT:  All right.  Thank you.

6        MS. HESSMILLER:  In Paragraph 5, the defendant

7  understands that he must register as a sex offender.

8        Paragraph 6 describes that the sentencing guidelines

9  are not mandatory.

10       In Paragraph 7, the United States Attorney's Office

11  agrees not to pursue an Indictment for any additional counts

12  relating to the distribution, transportation, receipt,

13  possession, or access with intent to view child pornography

14  that could arise from this investigation.  Also the U.S.

15  Attorney's Office agrees not to oppose the defendant's request

16  for the third point for acceptance of responsibility in advance

17  of trial, should the Court grant two points for acceptance.

18       Paragraph 8, the defendant is waiving his rights to

19  trial.

20       In Paragraph 9, your Honor, the defendant is waiving

21  certain appellate and collateral attack rights.  Specifically,

22  the defendant is waiving the right to appeal a sentence unless

23  the sentence is above the maximum of the guideline range, or

24  the mandatory minimum, whichever is higher.  In these cases

25  generally, your Honor, the guideline range is generally higher

1 than the mandatory minimum, but of course, that's up to

2 probation to determine that calculation.

3     The defendant is waiving a sentence unless it falls

4 above the higher maximum guideline range or the mandatory

5 minimum.

6     The defendant retains the right to appeal objections

7 preserved at sentencing that the Court incorrectly determined

8 the final guideline range.

9     The defendant retains the right to appeal a sentence

10 that exceeds the statutory maximum or is based on an

11 unconstitutional factor.

12     THE COURT:  Just a moment, please.

13     So the defendant is preserving his right to appeal

14 the sentence if it exceeds the mandatory minimum of five

15 years?

16     MS. HESSMILLER:  Or the highest of the guideline

17 range, your Honor, whichever is higher.  In this case, I expect

18 that the higher-- the high end of the guideline range will most

19 certainly be higher than the mandatory minimum.  But again,

20 that's up to probation to determine that calculation.

21     THE COURT:  But if the mandatory minimum--  Oh, I

22 see.  So the mandatory minimum exceeded the upper range of the

23 guidelines and he were sentenced above that, he would be

24 sentenced above the guideline.

25     MS. HESSMILLER:  Exactly, your Honor.  If the

1  guideline range were, say, 36 months, the mandatory minimum is

2  higher than that, and so in that case, the mandatory minimum

3  would be the higher of the two numbers.  But generally in these

4  types of cases, the guideline range is higher than the

5  mandatory minimum.

6  THE COURT:  All right.  Thank you.

7  Please go on.

8  MS. HESSMILLER:  Your Honor, also in that paragraph,

9  the defendant is waiving the right to challenge the conviction

10  and sentence and the manner in which sentence was brought in a

11  collateral attack under 28 U.S.C. 2255.  This agreement does

12  not in any way affect the right of the U.S. Attorney's Office

13  to appeal the sentence.

14  In Paragraph 10, the defendant agrees to waive his

15  rights under the Freedom of Information Act.

16  Paragraph 11, he agrees to waive attorney's fees.

17  In Paragraph 12, the defendant understands that the

18  Court is not a party to the agreement.

19  Paragraph 13, the defendant understands that this

20  agreement is only limited to these parties.

21  Paragraph 14, the defendant understands the

22  consequences of a breach of this agreement.

23  And Paragraph 15 indicates that the signature page is

24  the final page of the agreement.

25  THE COURT:  Why do we have a different signature page

1   as far as--

2       MS. HESSMILLER:  The one that was filed, your Honor?

3       THE COURT:  Yes.  I mean one was filed and then the

4   signature page obviously is a different piece of paper, and it

5   doesn't-- isn't punched the same way.

6       MS. HESSMILLER:  Correct, your Honor.

7       THE COURT:  I assume everything is proper, but I just

8   wanted an explanation.

9       MS. HESSMILLER:  Your Honor, the signature page that

10  was filed originally in Record Document Number 3, I received

11  the copy of the signatures from the defendant and defense

12  counsel over email, I then signed that page and filed that

13  document.  I also have that page, if the Court would like to

14  see that one.  I know sometimes the Court likes to see with

15  actual ink on the pages, so today defense counsel brought the

16  original page that the defendant and defense counsel signed,

17  and I just added my signature in ink today, your Honor, but I

18  also have the other page, if you prefer.

19      THE COURT:  But you had originally signed this on

20  March 18?

21      MS. HESSMILLER:  Correct, your Honor.

22      THE COURT:  All right.  And the other people signed

23  it on the dates that they have next to their names?

24      MS. HESSMILLER:  Correct, your Honor.

25      THE COURT:  All right.  Fine.

1     Now, Miss Hessmiller, were any other promises made to

2  this defendant to get him to plead guilty or to induce him to

3  sign this plea agreement, other than what is written down in

4  this plea agreement?

5     MS. HESSMILLER:  No, your Honor.

6     THE COURT:  All right.  Fine.  Thank you.

7     Counsel, do you agree with everything that the

8  prosecutor just said?

9     MR. GABRY:  I do, your Honor.

10    THE COURT:  And do you know of any other promises

11  that were made to your client to get him to plead guilty or to

12  get him to sign this plea agreement, other than what is

13  actually written in the plea agreement?

14    MR. GABRY:  There have been none.

15    THE COURT:  All right.  Thank you.

16    Mr. Abbring, did you hear what both attorneys said

17  about this plea agreement?

18    THE DEFENDANT:  Yes.

19    THE COURT:  Do you agree with what they both said?

20    THE DEFENDANT:  Yes.

21    THE COURT:  Do you believe anybody else has promised

22  you anything to get you to plead guilty, other than what is

23  written down in this document?

24    THE DEFENDANT:  No.

25    THE COURT:  This will be the time to say so if you

1   thought somebody else had promised you something; do you

2   understand that?

3       THE DEFENDANT:  Yes.

4       THE COURT:  And nobody else has promised you

5   anything; is that correct?

6       THE DEFENDANT:  That is correct.

7       THE COURT:  All right.  Well, I would like to talk to

8   you about a couple of the paragraphs in this plea agreement.  I

9   assume you have that right in front of you.

10      MR. GABRY:  We do, your Honor.

11      THE COURT:  Fine.  Let's talk about Paragraph Number

12  2.  Mr. Abbring, Paragraph Number 2 sets out the elements of

13  the offense.  Now, the elements of any offense are the parts of

14  the offense that the government has to prove before you can be

15  convicted.  They have to prove each part or each element beyond

16  any reasonable doubt before you can be convicted.  Do you

17  understand that?

18      THE DEFENDANT:  Yes.

19      THE COURT:  All right.  So Paragraph 2 sets out the

20  elements of this particular charge.  And the first element is

21  that you received child pornography, and that you knowingly

22  received it, you knew what you were receiving, it wasn't

23  something that you inadvertently received or you didn't know

24  what it was, but you knowingly received child pornography.

25  They also have to prove, going to the next page, that this

1   child pornography had been shipped or transported in interstate

2   or foreign commerce.  That means, across a state line or across

3   an international boundary by any means, including by computer.

4   And they have to show that you knew that this material

5   constituted or contained child pornography.  They have to show

6   that you not only knew that you received it, but that you knew

7   that it was or contained child pornography.  They also have to

8   show in addition to those things, that you had received this

9   someplace here in Western Michigan, because that is the

10  jurisdiction of this court, and they are claiming that you

11  received this in Ottawa County.  And they have to show that

12  this was received on or about February 7th, of 2013, because

13  that's what has been alleged in the Information.  And now

14  specifically, they would have to show that the child

15  pornography consisted of one or more of the visual depictions

16  that have been identified in this Felony Information, and there

17  are a number of those listed, because that's what they have put

18  you on notice as claiming was the child pornography.  So they

19  have to prove all of those things beyond any reasonable doubt.

20  Do you understand that?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Is that a fair statement of the elements

23  of this offense, counsel?

24          MR. GABRY:  Yes, your Honor.

25          THE COURT:  Miss Hessmiller, do you agree?

1      MS. HESSMILLER:  Yes, your Honor.

2      THE COURT:  All right.  Fine.

3      Now, let's move on to paragraph-- we will come back

4  and talk about the facts in more detail, but let's move on to

5  Paragraph Number 4.  You heard the prosecutor explain what

6  restitution is.  Did you understand that?

7      THE DEFENDANT:  Yes.

8      THE COURT:  Do you understand that it's really kind

9  of open-ended, until somebody makes a claim, we don't know who

10  that might be or what that claim might be, but you could be

11  responsible for it.  Do you understand that?

12      THE DEFENDANT:  Yes.

13      THE COURT:  And you are agreeing to pay that?

14      THE DEFENDANT:  Yes.

15      THE COURT:  All right.  Let's move on to Paragraph

16  Number 5.  That talks about registering as a sex offender.

17  This is your acknowledgment that you have to register as a sex

18  offender, it says in all applicable jurisdictions, and that's a

19  lot of places.  It's where you are convicted, which would be

20  here in Western Michigan, probably Ottawa County, that's where

21  you reside, if you move someplace, it would apply there as

22  well, and if you were to fail to do that, you could end up

23  being subject to being prosecuted in those jurisdictions.  It

24  would be a new criminal offense.  Do you understand that

25  obligation?

1     THE DEFENDANT:  Yes.

2     THE COURT:  All right.  Let's jump over to Paragraph

3  Number 9, this is entitled "Waiver of Appeal and Collateral

4  Attack."  Miss Hessmiller talked to you about this, as she did

5  the other paragraphs, but I want to talk to you about this one

6  in particular.

7     You have some rights that you and I have not talked

8  about, and you have these rights, even if you plead guilty.

9  The law says that you can appeal your sentence in this case,

10  even if you have pled guilty, but like other rights that you

11  have, you can give this right up.  You have a right to a trial,

12  which you can give up, and you have the right to appeal, and

13  you can give that up, and that's what you're doing here in

14  part.

15     Let's go back to the sentencing guidelines that you

16  and I talked about.  Do you remember, we talked about those

17  sentencing guidelines?

18     THE DEFENDANT:  Yes.

19     THE COURT:  And we said that the guidelines will

20  recommend a certain-- there will be a certain recommendation

21  those guidelines will produce.  Well, as I understand your

22  agreement here, if the Judge sentences you within that

23  recommended range or below it, you are agreeing that you will

24  not appeal that sentence or the way that sentence was imposed.

25  Is that your understanding?

1       THE DEFENDANT:  Yes.

2       THE COURT:  Now, if you're sentenced in excess of

3   what that recommendation is, then you're preserving your right

4   to appeal.  Is that your understanding?

5       THE DEFENDANT:  Yes.

6       THE COURT:  And by appeal, of course I mean appeal to

7   a higher court, which is the Sixth Circuit Court of Appeals.

8   That is--  You understand that?

9       THE DEFENDANT:  Yes.

10      THE COURT:  All right.

11          Now, sometimes there is a disagreement about how

12   those sentencing guidelines are actually calculated, as to what

13   that actual range is, and if you disagree with how those

14   calculations are done, normally they are done by the probation

15   office when it's preparing the presentence report, and those

16   disagreements are worked out ahead of time.  The attorneys can

17   see these ahead of time and they work these out with the

18   probation office, but sometimes they can't work out, people

19   just disagree about how they ought to be calculated.  In that

20   case, the Judge has to make the determination about how those

21   things ought to be calculated.  And that is done at the

22   sentencing, and then the sentencing becomes a two-step

23   process.  First of all, the Judge has to decide how should

24   these guidelines be calculated, and then secondly, once he does

25   that, do I want to follow the resulting recommendation.  He

1   says what is the recommendation, how did they calculate it, and

2   number two, should I follow it or not.  Then so if you have an

3   objection to the way they are calculated, and you bring it to

4   the Judge's attention so that he has a chance to address it,

5   and you don't agree with the way he calculates it, well then

6   you can appeal that to the higher court.  As long as you've let

7   him have a chance to hear your objection and deal with it.  Do

8   you understand that?

9        THE DEFENDANT:  Yes, sir.

10        THE COURT:  Okay.  So you're giving up your right to

11   appeal to a certain extent, but you're preserving it to a

12   certain extent.

13        Now, of course if he were to sentence you based on

14   some unconstitutional basis, like your race or religion, you're

15   preserving that right to appeal as well.  I'm not touching

16   everything, but I'm touching on the basics here.  You're giving

17   it up in part, and you're preserving it in part.

18        Now, you have a second right.  After you're sentenced

19   in this court, you can come back to this court and file a

20   motion in this court to attack your sentence.  And that's

21   called a collateral attack on your sentence.  It's called other

22   things as well, but it's all the same thing, whether you call

23   it a collateral attack, a 2255 motion, because Section 2255

24   says you can do it, or a petition for a writ of habeas corpus,

25   it's all the same thing, it's a motion in this court attacking

1 your sentence.

2 　　　But like other things that you can waive, you're

3 waiving that, you're giving that right up. And except in a

4 very limited circumstance, if you were to say well, my waiver

5 wasn't really voluntary or it was the result of ineffective

6 assistance of my attorney, except in very narrow situations

7 you're giving up your right as part of this plea bargain with

8 the other side. Do you understand that?

9 　　　THE DEFENDANT: Yes.

10 　　　THE COURT: Really what this plea bargain is, both

11 sides are making concessions to the other side. You're making

12 some concessions, they are making some concessions, you're both

13 coming to the table and putting things on the table and saying

14 here is what I'm putting on the table, A, B, and C, and they

15 are coming to the table and they're putting on-- they are

16 saying this is what we are putting on the table, one, two, and

17 three, and you're negotiating and you trade back and forth, and

18 it's all a package deal. Those are a couple of things you're

19 putting on the table, but you're getting something in return

20 for it. So there are concessions in exchange for-- concessions

21 from the other side. Do you understand that?

22 　　　THE DEFENDANT: Yes.

23 　　　THE COURT: Okay. Now, there is a third right

24 involved here, and that's a right belonging to the United

25 States government. They can appeal any sentence they think is

1   too low, and they are not putting that one on the table.  They

2   are preserving their right to appeal if they think the sentence

3   is too low.  Do you understand that?

4       THE DEFENDANT:  Yes.

5       THE COURT:  Okay.  And you're agreeing to all of

6   this; is that correct?

7       THE DEFENDANT:  Yes.

8       THE COURT:  Okay.  Just so you know, I've never seen

9   them waive their right to appeal, so you are not losing

10  anything by that.

11      THE DEFENDANT:  All right.

12      THE COURT:  I don't think you have ever waived that,

13  have you?

14      MS. HESSMILLER:  I haven't, your Honor.

15      THE COURT:  Nobody ever has, so.

16      Let's go to Paragraph Number 12.  This says the Court

17  is not a party to this agreement.  Mr. Abbring, when we use the

18  word "Court" we mean, of course, the Judge.  So that's another

19  way of referring to Judge Maloney.  So this sentence could read

20  Judge Maloney is not a party to this agreement.  What we have

21  here is an agreement you've reached with the government or the

22  prosecutor, and that's fine.  You both have decided to make

23  concessions to the other to resolve this case.  It's called

24  plea agreement, or plea bargain, or a deal.  Perfectly

25  appropriate.  And you put it in writing, so it's a written plea

1  agreement, and that's fine.  And you're both explaining it to

2  Judge Maloney through me, that's perfectly appropriate.  But

3  just because the two of you have entered into this plea

4  agreement, and you are telling Judge Maloney about it, doesn't

5  mean he is bound by it.  And he is not.  He didn't sign this

6  thing.  If you look on the back page, his signature is not

7  there.  I didn't sign it.  Now, the significance of that is

8  that he is not bound by it because he didn't sign it.  He is

9  not a party to it.  And the significance of that is that if he

10  decides not to follow somebody's recommendation, or if he were

11  to impose a harsher sentence than you expected, that doesn't

12  give you a basis for withdrawing your plea of guilty or

13  withdrawing from the plea agreement.  Do you understand that?

14        THE DEFENDANT:  Yes.

15        THE COURT:  And if somebody's made a prediction to

16  you as to what the sentence of the Court will be, I can tell

17  you Judge Maloney has not heard that prediction, and he would

18  not be bound by it if he had heard it.  Do you understand

19  that?

20        THE DEFENDANT:  Yes.

21        THE COURT:  So at the end of the day, the sentence of

22  the Court is entirely in Judge Maloney's discretion, and it's

23  entirely up to him what the sentence of the Court is?  Do you

24  realize that?

25        THE DEFENDANT:  Yes.

1     THE COURT:  All right.  Did anybody threaten you in

2   any way, or use any force, any duress, any undue pressure,

3   anything of that nature to make you plead guilty this morning?

4     THE DEFENDANT:  No.

5     THE COURT:  This is a voluntary decision as far as

6   you are concerned?

7     THE DEFENDANT:  Yes.

8     THE COURT:  Now, the charge was just filed today, and

9   you're pleading guilty today, but of course this plea agreement

10  was discussed sometime before this, I take it, by virtue of the

11  fact that you signed this back on the 17th.

12    THE DEFENDANT:  Yes.

13    THE COURT:  So you've had a chance to think about

14  this?

15    THE DEFENDANT:  Yes.

16    THE COURT:  You had a chance to discuss it with

17  whoever you wanted to?

18    THE DEFENDANT:  Yes.

19    THE COURT:  There is a thing called buyer's remorse,

20  and when people rush into things and they wake up the next

21  morning and think why did I do that?  So it's important that

22  you have a chance to mull this over, because it's obviously

23  life changing.  Do you feel you've had enough time to think

24  about this?

25    THE DEFENDANT:  Yes.

1      THE COURT:  All right.  Well, in that case, I need to

2  have you tell me what happened that makes you guilty of this

3  offense.  And if it helps to follow along on the Information,

4  that's fine.  But I need to have you tell me in your own words

5  what happened.

6      THE DEFENDANT:  I downloaded some child porn trying

7  to cover up feelings with it.

8      THE COURT:  I heard the first part, what was the

9  second part?

10      THE DEFENDANT:  I said I downloaded child porn trying

11  to basically cover up feelings, and I went on the computer on

12  the internet and used peer-to-peer file sharing program, and

13  then I discovered by accident some terms and then I started

14  using those terms to search for the child porn.

15      THE COURT:  Where were you physically when you did

16  all of this?

17      THE DEFENDANT:  At my residence.

18      THE COURT:  Where is your residence?

19      THE DEFENDANT:  In Hudsonville.

20      THE COURT:  In Ottawa County?

21      THE DEFENDANT:  Yep.

22      THE COURT:  And when did you do this?

23      THE DEFENDANT:  Yes, it was off and on February 7th.

24      THE COURT:  Of last year?

25      THE DEFENDANT:  Yes, 2013.

1     THE COURT:  Is it fair to say that you probably did

2  this prior to that time as well?

3     THE DEFENDANT:  Yes, I did it before that too.

4     THE COURT:  But this led up to doing it on February

5  7th as well?

6     THE DEFENDANT:  Yes.

7     THE COURT:  All right.  Now, what kind of computer

8  did you have?

9     THE DEFENDANT:  It's a desktop.

10     THE COURT:  All right.  And you were on-line on the

11  internet?

12     THE DEFENDANT:  Yes.

13     THE COURT:  And that's how you were able to obtain

14  this what you describe as child pornography?

15     THE DEFENDANT:  Yes.

16     THE COURT:  You mentioned going onto a peer-to-peer

17  file sharing program; is that right?

18     THE DEFENDANT:  Yes.

19     THE COURT:  How did you find that?

20     THE DEFENDANT:  The program?

21     THE COURT:  Yes.

22     THE DEFENDANT:  We had other ones to download music

23  and they caught viruses, so we got that one to download music

24  and movies.

25     THE COURT:  When you say the other ones had viruses,

1  you got that one, how did you get that one?

2       THE DEFENDANT:  I just downloaded the program for

3  free off of the internet.

4       THE COURT:  I see.  And so you had this program from

5  the internet, but did it have anything on it besides child

6  pornography?

7       THE DEFENDANT:  Yes.

8       THE COURT:  But it also had child pornography on it?

9       THE DEFENDANT:  Yes.

10      THE COURT:  And once you discovered that, what did

11  you do?

12      THE DEFENDANT:  First time I quick erased it, and

13  didn't look for it for a while, and then I found it again, and

14  then I searched for it again.

15      THE COURT:  So after awhile, you began to look for it

16  on purpose?

17      THE DEFENDANT:  Yes.

18      THE COURT:  And once you looked for it on purpose,

19  did you find it?

20      THE DEFENDANT:  Yes.

21      THE COURT:  And once you found it, what did you do?

22      THE DEFENDANT:  I moved it from the program to an

23  external hard drive.

24      THE COURT:  So you were able to download it to an

25  external hard drive of your own?

41

1          THE DEFENDANT:  Yes.

2          THE COURT:  And would you acknowledge that in

3   receiving that on a peer-to-peer program over the internet,

4   that the depictions that you downloaded had been, in fact,

5   transported or shipped in interstate commerce?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Awful hard not to be in this day and age

8   if they come from the internet, I take it?

9          THE DEFENDANT:  Yep.

10         THE COURT:  Now, referring to the Felony Information,

11  it says that you received approximately 250 files of child

12  pornography over the internet, would you agree with that

13  number?

14         THE DEFENDANT:  Yes.

15         THE COURT:  And what would you describe a file as

16  consisting of in size?

17         THE DEFENDANT:  The size?

18         THE COURT:  What would be in a file?

19         THE DEFENDANT:  An image.

20         THE COURT:  Pardon me?  An image?

21         THE DEFENDANT:  An image or a movie.

22         THE COURT:  So it could be in terms of a depiction,

23  it would be a picture, would be a single picture?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Would it be more than one picture?

1      THE DEFENDANT:  No.

2      THE COURT:  All right.  So it would be a single

3  picture?

4      THE DEFENDANT:  Yes.

5      THE COURT:  Could it be a movie?

6      THE DEFENDANT:  Yes.

7      THE COURT:  In your case, in these 250 files, how

8  many of those were movies?

9      THE DEFENDANT:  I don't know.

10      THE COURT:  Several?  What is your estimate?

11      THE DEFENDANT:  Maybe out of the 250, maybe 50.

12      THE COURT:  Fifty of the 250?

13      THE DEFENDANT:  Yes, that would be the best guess.

14      THE COURT:  All right.  Now, it says here that among

15  the 250 files, there were the certain specified visual

16  depictions, in other words, there were six specified files, and

17  those are all listed here.  Are you familiar with the six that

18  are listed here?

19      THE DEFENDANT:  Not really.  I didn't view the

20  majority of them.

21      THE COURT:  I'm sorry?

22      THE DEFENDANT:  I didn't view most of the images.

23      THE COURT:  How do you know they were child

24  pornography?

25      THE DEFENDANT:  From the few that I did download.

1  The ones I looked at had the same parts of the words on them.

2      THE COURT:  Counsel, has your client seen these six

3  files?

4      MR. GABRY:  Your Honor, I gave him the opportunity,

5  he didn't want to look at them.  I met with the authorities,

6  I've reviewed the files, I've documented them on the forensic

7  downloads as to the dates, and we would agree that that is

8  child pornography that was downloaded.  Whether he actually has

9  a memory of seeing that particular image, given the number that

10  he downloaded, he really does not.  We would not contest it.

11      THE COURT:  Is it fair to say that you have viewed a

12  number of the ones that you downloaded?

13      THE DEFENDANT:  Yes, a small number of them.

14      THE COURT:  Well, you told me you went looking for

15  them because they were child pornography.  Did I have that part

16  correct?

17      THE DEFENDANT:  Yes.

18      THE COURT:  And then you downloaded them because they

19  were child pornography?

20      THE DEFENDANT:  Yes.

21      THE COURT:  Is that correct?

22      THE DEFENDANT:  Yes.

23      THE COURT:  And you opened them so that you could see

24  them, at least some of them; is that correct?

25      THE DEFENDANT:  Yes.

1    THE COURT:  And are you satisfied in your own mind

2  that the six that are listed here are, in fact, child

3  pornography?

4    THE DEFENDANT:  Yes.

5    THE COURT:  Miss Hessmiller, how do we know that

6  these six are child pornography?

7    MS. HESSMILLER:  Your Honor, I have them for the

8  Court's review.

9    THE COURT:  All right.  Would you bring those up,

10  please.  First of all, would you show them to defense counsel

11  to have him confirm that those are the six that he has agreed

12  are child pornography.

13    MR. GABRY:  These are the same that Miss Hessmiller

14  showed me before we went on the record, your Honor.  I do

15  agree.

16    THE COURT:  And you stipulate that those are, in

17  fact, child pornography?

18    MR. GABRY:  They are, your Honor.

19    THE COURT:  All right.  The Court has examined those

20  and unquestionably finds them to be child pornography.

21    Now, Miss Hessmiller, were those--  Well, let me back

22  up a second.  I withdraw that question.

23    Mr. Abbring, what happened on February 7th, 2013, why

24  is that date in the Indictment-- I'm sorry, in the

25  Information?  What happened on February 7?

1        THE DEFENDANT:  I downloaded an image on that day.

2        THE COURT:  Well, let me ask Miss Hessmiller.  Why is

3    that particular day in the Information?

4        MS. HESSMILLER:  Your Honor, that particular day is a

5    day where the defendant downloaded 250 files of child

6    pornography on that day.  There were other days, other files,

7    but the forensic results determined that there were 250 files

8    of child pornography on that particular day.

9        THE COURT:  I see.  And the six that you have listed

10   in the Felony Information, are those among the 250 that were

11   downloaded on that particular day?

12       MS. HESSMILLER:  Yes, your Honor.

13       THE COURT:  All right.  And that's what your

14   forensics expert would be able to testify to?

15       MS. HESSMILLER:  Yes, your Honor.

16       THE COURT:  And counselor, you would stipulate to

17   that?

18       MR. GABRY:  Yes, your Honor, I have reviewed-- I met

19   with the expert, he showed me all of the documents, and I have

20   gone over all of the reports.

21       THE COURT:  All right.  Mr. Abbring, do you agree

22   that the six visual depictions of child pornography listed in

23   the Felony Information were, in fact, downloaded by you on that

24   particular day?

25       THE DEFENDANT:  Yes.

1      THE COURT: You've talked to your attorney and you

2 had a chance to review the evidence and; is that correct?

3      THE DEFENDANT: Yes.

4      THE COURT: So you satisfied yourself that that's--

5 that allegation is correct? You are the one stuck with it if

6 you say yes.

7      THE DEFENDANT: Yes.

8      THE COURT: All right. So just so I'm clear on this,

9 you received those 250, they were downloaded on that day, you

10 didn't look at all of them, but you looked at some of them, and

11 enough to know that you were, in fact, downloading child

12 pornography on that date?

13      THE DEFENDANT: Yes.

14      THE COURT: And are those the ones that went to an

15 external hard drive?

16      THE DEFENDANT: Yes.

17      THE COURT: Because you put them there?

18      THE DEFENDANT: Yes.

19      THE COURT: What were you going to do with them on an

20 external hard drive?

21      THE DEFENDANT: Nothing.

22      THE COURT: Miss Hessmiller, do you believe the

23 statements made by the defendant are sufficient to support a

24 plea of guilty to this charge?

25      MS. HESSMILLER: Yes, your Honor.

1        THE COURT:  Counsel, do you agree?

2        MR. GABRY:  I do, your Honor.

3        THE COURT:  Mr. Abbring, have you had sufficient time

4   and opportunity to talk about this case with your attorney?

5        THE DEFENDANT:  Yes.

6        THE COURT:  Are you satisfied with his advice to

7   you?

8        THE DEFENDANT:  Yes.

9        THE COURT:  Are you satisfied with the way that he

10   has represented you?

11        THE DEFENDANT:  Yes.

12        THE COURT:  Do you have any questions about anything

13   we have talked about this morning?

14        THE DEFENDANT:  No.

15        THE COURT:  Do you still wish to plead guilty?

16        THE DEFENDANT:  Yes.

17        THE COURT:  Is there anything else the attorneys want

18   to put on the record at this particular time that would affect

19   the sentencing guidelines?

20        MS. HESSMILLER:  No, your Honor.

21        MR. GABRY:  Nothing, your Honor.

22        THE COURT:  All right.  I find, first of all, that

23   the defendant is, in fact, competent to enter a plea of guilty

24   at this time.  And that his plea is both knowledgeable and

25   voluntary.

1       Second, I find that he fully understands his rights,

2   the nature of the charge against him, and the consequences of

3   his plea of guilty.

4       Third, I find the defendant does have a sufficient

5   basis in fact which contains all of the elements of the offense

6   charged.

7       Fourth, I find the defendant is, in fact, guilty.

8   And therefore, I accept his plea, subject of course, to final

9   adjudication on these matters by the district judge at or

10  before the time of sentencing.

11      I find both the plea and the plea agreement to have

12  been voluntarily and knowingly entered into.  I do not accept

13  or reject the plea agreement, but reserve the acceptance of

14  that agreement for the district judge at or before the time of

15  sentencing, pursuant to the local court rule.

16      My report and recommendation to the district judge

17  will contain these recommendations and findings.

18      The parties have 14 days from today to file any

19  objections.  You'll have that report and recommendation by the

20  time you get back to your offices.

21      The clerk's office is directed to make a transcript

22  of these proceedings available to counsel upon request.

23      And, counsel, I'm sure you are aware of your

24  obligation to put your client in immediate contact with the

25  probation office for a presentence investigation report, and

1  that means right now, if you haven't done it already.

2      MR. GABRY:  To the marshal's office first, your

3  Honor, and then downstairs?

4      THE COURT:  The marshals will explain the logistics,

5  but--

6      U.S. DEPUTY MARSHAL:  He doesn't need to be

7  processed.

8      THE COURT:  Right.  We will have to set bond in this

9  matter, but before the end of the day, or before you leave,

10  he's got to see the probation office.

11      MR. GABRY:  Certainly.

12      THE COURT:  And we put that burden on the attorneys

13  now that we don't have the probation officers sitting here.

14      MR. GABRY:  That's fine, your Honor, I'll do that.

15  I'll certainly do that.

16      THE COURT:  All right.  And we will address the

17  matter of bond in just a moment.

18      And before I forget, I'm going to return the plea

19  agreement, the original, to Miss Hessmiller for safekeeping.

20  And I believe that leaves only the matter of bond.  What is the

21  government's recommendation on bond?

22      MS. HESSMILLER:  Your Honor, the government's not

23  seeking detention.  This is an Adam Walsh case, so there are

24  certain requirements under 3142 for the defendant's release.

25      THE COURT:  I'm going to release the defendant on an

1  unsecured appearance bond based on the conversation this

2  morning with the pretrial services office before we came into

3  court, and based upon Miss Hessmiller's recommendation, it's a

4  $20,000 unsecured appearance bond.  This is an Adam Walsh case,

5  so the defendant will have to be on electronic monitoring and

6  remain within the Western District of Michigan unless he has

7  the prior approval of the pretrial services office to leave the

8  district.  No weapons in the house.  And no access to

9  computers.  No access to minors, unless he is accompanied by

10  adults.  The pretrial services people or probation office

11  people can explain those matters in detail.

12       Can you abide by those conditions, sir?

13       THE DEFENDANT:  Yes.

14       THE COURT:  All right.  Anything further?

15       MR. GABRY:  Yes.  Well, go ahead if you have anything

16  else.

17       MS. HESSMILLER:  No, your Honor, there was a matter

18  that defense counsel brought to my attention earlier, I didn't

19  know if they wanted to raise that before we go.

20       MR. GABRY:  One matter, your Honor, my client did, in

21  fact, meet with pretrial services and he raises a question of

22  the fact that there is a family vacation.  By that, I mean his

23  mother and father would be willing to take him and his wife,

24  who is present in the courtroom, and daughter for a week

25  get-away together between April 28th or April 27th and May 5th.

1   It is outside of the Western District.  It is in South

2  Carolina.

3        THE COURT:  They spoke to me about that.  The

4  probation office has advised against that.

5        MR. GABRY:  Okay.  If that is the Court's position.

6        THE COURT:  And also that is when the probation

7  office is going to be working on the presentence report about

8  that time too, so unless things change and their attitude

9  changes, I'm not going to approve that.

10       MR. GABRY:  All right.  Thank you, your Honor.

11       THE COURT:  All right, sir.  The clerk will give you

12  an oath that you'll abide by your conditions of release.

13       COURT CLERK:  Will you stand and raise your right

14  hand.

15       (At 10:38 a.m., defendant given oath.)

16       COURT CLERK:  All rise.  Court is adjourned.

17       (At 10:39 a.m., proceedings were concluded.)

18

19

20

21

22

23

24

25

KATHLEEN S. THOMAS, U.S. District Court Reporter
410 West Michigan Avenue, Kalamazoo, Michigan  49007
(269)385-3050

1

2

3

4

5                    CERTIFICATE

6

7

8      I certify that the foregoing is a transcript from the

9  Liberty Court Recording System digital recording of the

10  proceedings in the above-entitled matter, transcribed to the

11  best of my ability.

12

13

14

15                    Kathleen Sue Thomas /s/

16                    Kathleen Sue Thomas, CSR-1300

17

18

19

20

21

22

23

24

25